UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| EIA PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:14-CV-328-REW |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| FENWICK EQUESTRIAN, LLC, et al., | ) | ORDER |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff, EiA Properties, LLC ("EiA"), moved for summary judgment. DE #31. Defendants, Fenwick Equestrian, LLC, and Fenwick Farm, Inc. (collectively, "the Fenwick entities"), responded. DE ##34, 35 (identical save for party name and descriptions). EiA replied. DE #40 (combined Reply and Response) (identical). The Fenwick entities moved for judgment on the pleadings. DE ##36, 37 (identical). EiA responded. DE ##41, 42 (identical). The Fenwick entities replied. DE ##45, 46 (identical). The matters are fully briefed and ripe for consideration. For the reasons that follow, the Court **DENIES** EiA's motion for summary judgment (DE #31) and **GRANTS** the Fenwick entities' motions for judgment on the pleadings (DE ##36, 37). South Carolina law applies and provides EiA no avenue to obtain the particular relief it seeks.

I.      BACKGROUND

This case represents EiA's endeavor to enforce a state court judgment adverse to Wilhelmina McEwan ("McEwan") against the Fenwick entities. EiA, in the state action, sought to collect on a $150,000 promissory note and foreclose on a mortgage on certain

Fayette County real estate, known as the Snow Goose Property. The Fayette Circuit Court entered final judgment in the amount of $351,418.31 (according to the Complaint)[1] and an order confirming the sale of the Snow Goose Property. DE ##1-1 (Final Judgment and Order of Sale). The Master Commissioner sold Snow Goose to bidder EiA for $182,667.00. DE #1-2 (Report of Sale), at 1. The sale amount was credited against the final judgment, leaving a deficiency balance of $168,751.37 (again, according to the Complaint),[2] plus post-judgment interest and other costs and expenses.

EiA states that "[t]his is an action seeking to recover on an outstanding state court judgment against [McEwan] from her alter egos, [the Fenwick entities], by piercing the corporate veils of the alter egos." DE #1 (Complaint), at 1. EiA is a Kentucky LLC whose sole member is a citizen of Virginia. DE #48 (curative pleading), at 1. Both Fenwick entities are creatures of South Carolina law, and the LLC's two members are citizens of South Carolina. *Id.* at 1-2. EiA "seeks to enforce a judgment obtained in a state-court foreclosure action[.]" DE #1, at 2. EiA requests "a judicial piercing of the corporate veil as necessary to hold [the Fenwick entities] liable for the Deficiency Balance[,]" compensatory damages equivalent to the Deficiency Balance, and costs and expenses, including attorney fees. *Id.* at 6.

---

[1] The Court has difficulty independently computing the total figure. The principal is $150,000. Pre-judgment interest through 10/25/10 is $181,269.86. Pre-judgment interest from 10/25/10 to 1/13/11 is $36.99 per day for 80 days, which totals $2,959.20. Costs and expenses are $17,198.31. These amounts total $351,427.37, which is $9.06 greater than the amount EiA claims.

[2] Simply subtracting the sale price from the claimed judgment amount results in $168,751.31, a 6-cent difference.

## II.     CHOICE OF LAW

In this diversity case,[3] the Court first must make a choice of law determination. EiA argues that South Carolina law applies (or that the "question is superfluous"). DE #31-1, at 3 (citing *Restatement (Second) of Conflict of Laws* § 307 and *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467-68 (Ky. Ct. App. 2012)). The Fenwick entities contend that "[n]o choice of law analysis is necessary" to determine that Kentucky law applies. DE #34, at 2-3 (factually distinguishing *Howell* and cataloguing Kentucky ties). To determine which state's substantive law applies, a federal court sitting in diversity applies the choice of law rules of the forum state (here, Kentucky). *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013); *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 61 S. Ct. 1020, 1021-22 (1941)).

Determining and applying the applicable choice of law rule is the Sixth Circuit's normal approach in these circumstances. *See, e.g.*, *In re Dow Corning Corp.*, 778 F.3d

---

[3]     The Supreme Court has found a lack of federal question jurisdiction and ancillary jurisdiction in a veil piercing case. *Peacock v. Thomas*, 116 S. Ct. 862, 866 (1996) ("Piercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action." (internal quotation marks and citation removed)). Here, the Court has diversity jurisdiction. *See* 28 U.S.C. § 1332(a); *see also infra* note 7.

Nothing categorically bars a federal court from properly entertaining a suit to enforce a state court judgment, as EiA here seeks. *See, e.g.*, *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1316 (M.D. Fla. 2015) (maintaining jurisdiction over a suit filed to enforce a state court Deficiency Judgment). "Federal courts are authorized to enforce state court judgments." *Wright v. Bank of Am., N.A.*, 517 F. App'x 304, 308 (6th Cir. 2013) (citing *Berke v. Northcutt*, 798 F.2d 468, at *2 (6th Cir. 1986) (table) ("Plaintiff alleges that he has a judgment and that defendant has failed to pay on the judgment. Several federal courts, adhering to 28 U.S.C. § 1738, have adjudicated actions seeking enforcement of a state court judgment. . . . Further, it has not been considered a bar to such an action that the federal district court in which enforcement is sought sits in the same state in whose courts the judgment in issue was rendered.")).

545, 548-52 (6th Cir. 2015) (applying North Carolina choice of law rules to determine North Carolina substantive law applies without first determining if the potentially applicable substantive laws conflict); *Bahr v. Tech. Consumer Prods., Inc.*, 601 F. App'x 359, 365 (6th Cir. 2015) (applying Ohio choice of law rule to determine Minnesota law applies without first analyzing possible conflict); *Sun v. CM Prods., Inc.*, 393 F. App'x 283, 286 (6th Cir. 2010) (applying Kentucky choice of law rule to determine District Court did not err in applying Illinois law without previously determining if substantive laws conflict); *Miller*, 87 F.3d at 824-25 (holding Pennsylvania law applies under Ohio choice of law rules without first deciding if the Pennsylvania and Ohio substantive laws conflict); *but see CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (grappling with "some important questions as to the appropriate choice of law" concerning "matters of professional responsibility" and ultimately not deciding what Michigan's choice of law principles would dictate because "Michigan's standards of professional conduct are consistent with the other possible sources of law"); *Dow Corning*, 778 F.3d at 555 (Sutton, J., dissenting) ("The first imperative of a conflict-of-laws problem is: a conflict. When all roads lead to the same result, there is no conflict to resolve.").

Here, it is far from clear whether applying South Carolina and Kentucky law would end in the same result, and the analytical approach under each state's law—when neither state has spoken with clarity (if at all) on the relevant legal issue—would most certainly vary. In this context—with the states' respective legal posture sufficiently different, and with the variety of related issues the Court faces—the Court resolves the choice of law question and applies the appropriate state's law. *See also Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005) (District Court did not err in applying

Michigan state law where there was no conflict of laws.). Even if both roads might lead to the same result, they would traverse wholly different unblazed paths in so reaching. *See also infra* note 19.

In the usual case, characterization of the cause of action determines the applicable choice of law rule.[4] For example, "Kentucky articulates two different choice of law rules with respect to contract and tort actions. Kentucky precedent dictates that the 'any significant contacts' test applies to tort actions, whereas the Restatement's 'most significant contacts' test applies to contract disputes." *Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC*, No. 08-181-DLB, 2010 WL 996473, at *3 (E.D. Ky. Mar. 16, 2010) (citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009)). Determining Kentucky's choice of law approach here is somewhat theoretically complicated—although the difficulty falls away in practice—because "piercing the corporate veil . . . [is] not—standing alone—[a] cause[] of action." *Weingartner*, 2010 WL 996473, at *4 (holding Kentucky law applies). To add another layer of (at least abstract) complexity, this is not a straightforward veil piercing case; instead, it seeks *reverse* veil piercing (a concept explored later).

---

[4] Courts have noted the generally provincial nature of Kentucky's choice of law rules. *See, e.g.*, *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (noting the District Court's characterization of Kentucky's rules as "egocentric" and having a "provincial tendency"); *Asher v. Unarco Mat. Holding, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010) ("[A] strong preference exists in Kentucky for applying Kentucky law."). "Kentucky's choice of law rules favor application of its own law whenever it can be justified." *Johnson v. S.O.S. Transport, Inc.*, 926 F.2d 516, 519 n.6 (6th Cir. 1991); *see also Louisville/Jefferson Cnty. Metro Gov't v. Hornblower Marine Servs.-Ky., Inc.*, No. 3:06-CV-348-S, 2009 WL 3231293, at *3 (W.D. Ky. Oct. 2, 2009) ("Kentucky courts apply their own law where Kentucky has a significant interest in the case." (citing *Wessling v. Paris*, 417 S.W.2d 259 (Ky. 1967)).

The Court, conceptually, sees three possibilities: applying (1) Kentucky's veil piercing / corporate choice of law rule (*Howell* / § 307), (2) Kentucky's contractual choice of law rule (because the underlying adjudged matter concerns contract, keeping in mind the Commonwealth's background preference for its own law), or (3) the traditional property rule where the law of the *situs* state controls (because the adjudged matter involves real estate), *see, e.g.*, *Barber*, 85 F. Supp. 3d at 1316 ("[T]he legal issue in this case sounds in property. In Florida, the law of the *situs* of the property controls."); *Mazza v. Mazza*, 475 F.2d 385, 388 & 388 n.6 (D.C. Cir. 1973); *In re Barrie's Estate*, 35 N.W.2d 658, 661, 663 (Iowa 1949). Facing this uncertainty, the Court perceives Kentucky's veil piercing / corporate choice of law approach to be most appropriate and thus applies it. *See, e.g.*, *Milliken & Co. v. Haima Grp. Corp.*, No. 08-22891-MC, 2010 WL 1286462, at *3 (S.D. Fla. Mar. 1, 2010) (applying Florida's choice of law rule governing "claims involving corporations" to a reverse veil piercing claim); *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 442 (Bankr. S.D. Fla. 2009) (applying Florida's choice of law rule governing corporate internal affairs to a reverse veil piercing claim and determining the local law of Connecticut, the state of incorporation, applies). The present dispute solely concerns the propriety of reverse veil piercing as remedy; it does not directly implicate the underlying contract / mortgage or threaten to affect the subject real estate.

In a traditional corporate veil piercing case, Kentucky courts apply *Restatement (Second) of Conflict of Laws* § 307, which states that "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for

corporate debts." *See Howell*, 383 S.W.3d at 467 (quoting § 307 and applying Ohio law to a veil piercing claim against an Ohio LLC but, in *dicta*, reaching the same result under Kentucky law).[5]

*Howell* determined that "the rights, duties and obligations of an Ohio LLC and its members are governed by Ohio law." *Id.* (citing § 307 and cases from the Second Circuit, the District of Columbia, Louisiana, Oklahoma, and Wisconsin).[6] True, as the Fenwick entities point out, *Howell* and this case differ factually. There, Howell, a Kentucky corporation, sued Berling (an individual) and Westview (an Ohio LLC) in Kentucky court for breach of contract concerning Ohio real estate development. Howell asked the court to disregard LLC status and hold Berling personally liable for Westview's debt. Here, on the other hand, EiA, a Kentucky LLC, sued the Fenwick entities, a South Carolina LLC and corporation, to collect on a judgment against McEwan, a South Carolina citizen, concerning a foreclosure on Kentucky real estate. The key differences are the location of the involved real estate (in or out of the forum state) and the posture of the individual vis-à-vis the entity (*i.e.*, traditional v. reverse veil piercing).[7] The Kentucky

---

[5] Not all courts read § 307 literally. *See, e.g.*, *Chrysler Corp. v. Ford Motor Corp.*, 972 F. Supp. 1097, 1102-03 (E.D. Mich. 1997) (Sections 307 and 309 "apply the law of the state of incorporation except where another state has a more significant relationship to the parties and the transaction."); *see generally* Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Disregard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85 (2008). This is not the approach the Kentucky Court of Appeals adopted.

[6] This is consistent with the general background principle that "the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 103 S. Ct. 2591, 2597 (1983) (emphasis removed); *see also, e.g.*, *Casden v. Burns*, 306 F. App'x 966, 974 (6th Cir. 2009).

[7] In general terms, this case features competing interests in the choice of law analysis. On one hand, Kentucky is the forum, the place of the injury, the location of the underlying state litigation, EiA's origin state (EiA's sole member, though, is a citizen of Virginia),

Court of Appeals did not premise its reliance on § 307 on *Howell*'s particular facts, as evidenced by its citation to multiple other parallel cases. The court's concern was generally applying the law of the state of organization when determining an entity's rights, duties, and obligations. The Court notes that § 307, by its terms, only applies to "a shareholder's liability to the corporation[,]" not, as here, the inverse—an entity's liability for debts of a member or shareholder. The Kentucky court, however, took § 307 to stand for a broader principle: the applicable choice of law rule regarding a veil piercing claim implicating the rights, duties, and obligations of a business entity in general.[8]

---

*situs* of the concerned real estate, and state of the underlying mortgage. Each of these factors favors applying Kentucky law. On the other hand, the case implicates South Carolina law as the state of the Fenwick entities' creation. Fenwick Equestrian's two members—Wilhelmina and Frederick McEwan—are citizens of South Carolina. DE #48, at 1-2. The factors weigh in favor of applying South Carolina law. The parties have not litigated the existence of personal jurisdiction over the Fenwick entities. *See, e.g.*, *King v. Taylor*, 694 F.3d 650, 660 (6th Cir. 2012) (District Court abused its discretion in holding Taylor had not forfeited his lack of personal jurisdiction defense when he "voluntar[il]y, active[ly], and extensive[ly] participat[ed] in the litigation" until the dispositive motion phase.). Ultimately, any interest balancing or relationship weighing must yield to *Howell*'s conclusion that Ohio law applied to a dispute concerning the rights, duties, and obligations of an Ohio LLC and its member.

[8]     A Sixth Circuit Bankruptcy Appellate Panel characterized *Howell* broadly as "look[ing] to the law of the state in which the entity for which derivative liability is sought was incorporated[.]" *In re Appalachian Fuels, LLC*, 493 B.R. 1, 18 (B.A.P. 6th Cir. 2013).

The Court properly relies on *Howell* absent Kentucky Supreme Court guidance on the question. *Stoner v. New York Life Ins. Co.*, 61 S. Ct. 336, 338 (1940) ("Federal courts, under the doctrine of *Erie* . . . must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."); *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 421-22 (6th Cir. 2006).

The Court notes that *Howell*'s choice of law approach is consistent with the apparent majority rule. *See Tomlinson v. Combined Underwriters Life Ins. Co.*, 684 F. Supp. 2d 1296, 1298 (N.D. Okla. 2010) ("[T]he vast majority of jurisdictions addressing this question have applied the law of the state of incorporation to veil-piercing claims.").

The Kentucky Supreme Court has twice discussed *Howell* and its use of Ohio law without any indication the choice was error. *Pannell v. Shannon*, 425 S.W.3d 58, 75 n.15 (Ky. 2014); *Turner v. Andrew*, 413 S.W.3d 272, 277 (Ky. 2013).

The Sixth Circuit has also given guidance on choice of law in the veil piercing context. "Under the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (applying Ohio law) (citing *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005) (looking "to the choice of law provisions of the forum state" to determine which substantive law applies)). "When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits."[9] *Id.*

*Corrigan*'s recognition that forum law governs the substantive question of veil piercing is not inconsistent with *Howell* and indeed incorporates the forum state's choice of law rules. The Sixth Circuit's direction to "apply the same substantive law as would have been applied if the action had been brought in a [Kentucky] court" further supports this conclusion. *Corrigan*, 478 F.3d at 723; *accord Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) ("Because this is a diversity action, the law of the forum state,

---

[9] The United States District Court for the Western District of Kentucky took this statement to mean that Kentucky substantive law applies without regard to Kentucky's choice of law rules (*i.e.*, Kentucky's "local law" or "internal law"). *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 782 (W.D. Ky. 2013) (citing *Corrigan* and not applying Missouri, the state of incorporation, law). *Pro Tanks*, decided after *Howell*, does not discuss or cite *Howell*. *Corrigan*, on which *Pro Tanks* relied, did not involve Kentucky law and did not limit its statement to only local or internal law. *See also Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007) (At least in a contractual choice of law provision, reference to a state's "law," as opposed to a state's "local law[,]" "means the totality of its law including its choice of law rules[.]" (quoting *Restatement (Second) of Conflict of Laws* § 186 cmt. b)).

9

including the choice-of-law rules, apply."). A Kentucky court, applying *Howell*, would determine that South Carolina law (as the law of the state of incorporation) governs this dispute. Thus, recognizing *Corrigan* and applying Kentucky law, *Howell* (the Kentucky precedent most on point) directs the Court to apply the law of the state of the Fenwick entities' organization—South Carolina.

The Court is mindful that reverse veil piercing does not fit squarely within *Howell* and § 307's box. Still, EiA asks the Court to set aside corporate formalities and traditional structure to hold a corporation and LLC liable for debts of an individual. Indeed, the Fenwick entities may lay claim to a greater corporate interest than in straightforward veil piercing cases due to the potential for greater, more direct corporate liability. Applying South Carolina law in these circumstances honors the letter and intent of Kentucky law—to apply the law of the state of organization to determine "the rights, duties and obligations" of the Fenwick entities. *Howell*, 383 S.W.3d at 467.

## III.    STANDARDS OF REVIEW

### A.    *Summary Judgment*

EiA moved for summary judgment. DE #31. A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the

matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (Brennan, J., dissenting) (citation omitted); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it" (citation and internal quotation marks omitted)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

B.       *Judgment on the Pleadings*

The Fenwick entities moved for judgment on the pleadings. DE ##36, 37; *see* Fed. R. Civ. P. 12(c). In reviewing the motion, the Court "construes the complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (internal quotation marks and citation removed). The Court applies *Twombly* and *Iqbal* pleading requirements to Rule 12(c) motions. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks removed) (quoting and citing *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 127 S. Ct. at 1965). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." *HDC*, 675 F.3d at 611 (citation removed).

## IV.   ANALYSIS

Traditionally, when a court pierces the corporate veil, it sets aside the separate legal existence of a corporation to hold shareholders or directors directly liable for corporate liabilities. *See, e.g.*, *Anderson v. Abbott*, 64 S. Ct. 531, 538 (1944). Here, however, in a reverse veil piercing scenario, EiA asks the Court to set aside the separate legal existence of a corporation and LLC to hold the entities directly liable for the obligations of a shareholder and owner. EiA seeks to hold the Fenwick entities liable for a state court judgment against McEwan.

EiA's Complaint characterizes McEwan's lack of functional separateness from the Fenwick entities (even if they maintain formal legal distinctions). The Complaint plausibly alleges that the Fenwick entities are McEwan's alter egos and that she uses them to shield her assets to avoid paying the Deficiency Balance. The Fenwick entities do not dispute "the factual statements attributed to Ms. McEwan that form the basis for the Plaintiff's Summary Judgment Motion" (the entire deposition transcript is at DE #31-4) but emphasized that she only spoke in an individual capacity, a distinction of doubt here. DE #34, at 4-5.

13

The Court notes, from the outset, that EiA's attempt to pierce Fenwick Equestrian, LLC's veil presents a fundamental concern unaddressed by the parties: "Piercing the corporate veil of an LLC has not yet been recognized in [South Carolina.]" *Oskin v. Johnson*, 735 S.E.2d 459, 469 n.17 (S.C. 2012) (Hearn, J., concurring in part and dissenting in part); *see also* S.C. Code § 33-44-303; *id.* § 33-44-201; *but see A & J, LLC v. KG Rescue, LLC*, No. 2012-UP-194, 2012 WL 10841347, at *1 (S.C. Ct. App. Mar. 21, 2012) (*per curiam*) (rejecting an LLC veil piercing claim only after conducting a veil piercing analysis). In light of the ambiguity (but mostly because it is not dispositive), the Court considers EiA's claims generally as to both entities.

In South Carolina, "the doctrine of piercing the corporate veil is not to be applied without substantial reflection." *Drury Dev. Corp. v. Found. Ins. Co.*, 668 S.E.2d 798, 800 (S.C. 2008) (quoting *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984)). "[A] corporation is an entity, separate and distinct from its officers and stockholders, and . . . its debts are not the individual indebtedness of its stockholders." *Hunting v. Elders*, 597 S.E.2d 803, 806 (S.C. Ct. App. 2004) (internal quotation marks and citation omitted). "If any general rule can be laid down, it is that a corporation will be looked upon as a legal entity until sufficient reason to the contrary appears; but when the notion of legal entity is used to protect fraud, justify wrong, or defeat public policy, the law will regard the corporation as an association of persons." *Id.* (quoting *Sturkie*, 313 S.E.2d at 318).[10] "The party seeking to pierce the corporate veil has the burden of proving that the doctrine should be applied." *Id.* To determine veil piercing propriety, South Carolina uses a two prong test. "The first prong analyzes the shareholder's relationship to the corporation by

---

[10] This language, in almost precisely the same form, tracks back to *United States v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (E.D. Wis. 1905).

14

evaluating eight factors. The second prong requires the plaintiff to demonstrate that 'fundamental unfairness' would result from recognition of the corporate entity." *Id.*; *see also Multimedia Pub. of S.C. v. Mullins*, 431 S.E.2d 569, 571 (S.C. 1993) (elaborating on the two prongs).[11] Not all of the first prong's eight factors need be satisfied. *Hunting*, 597 S.E.2d at 807.[12] Because "[t]he corporate form may be disregarded only where equity requires the action to assist a third party[,]" "[t]he heart of the dispute . . . is whether the preponderance of the evidence shows that if the separate identity of [the entity] is regarded, the [third party] will suffer injustice or fundamental unfairness." *Sturkie*, 313 S.E.2d at 318-19 (refusing to pierce veil where a third party sought to enforce a judgment against the corporation against Sifly and Walter as corporate officers and directors).

Reverse veil piercing, in these circumstances, appears to be a matter of first impression in South Carolina.[13] EiA acknowledges that "there are no South Carolina

---

[11] Some courts acknowledge that "[g]enerally, in determining whether to outside reverse pierce the corporate veil, a court should review the same factors utilized in determining whether traditional veil piercing is appropriate." *E.g.*, *In re Phillips*, 139 P.3d 639, 646 (Colo. 2006) (*en banc*); *see also id.* (noting that "some additional equitable considerations apply in the outside reverse piercing context"); *Floyd v. I.R.S.*, 151 F.3d 1295, 1299 (10th Cir. 1998) (noting "many problems" with reverse veil piercing, including considerations of bypassing "normal judgment-collection procedures" and the potential for unfair prejudice to third parties with an interest in the corporation).

[12] *Drury* contemplates a litigant bringing a veil piercing claim "in a subsequent action." 668 S.E.2d at 801; *see also Carolina Marine Handling v. Lasch*, 609 S.E.2d 548, 553 n.6 (S.C. Ct. App. 2005) ("[A]n attempt to pierce the corporate veil often occurs post-judgment[.]"); *Drury*, 668 S.E.2d at 801 n.2 (acknowledging the possibility of "a subsequent action to pierce the corporate veil"). The Court would not dismiss EiA's suit solely on the cause of action / remedy distinction the Fenwick entities attempt to make.

[13]        Cases and academic literature delineate two types of reverse veil piercing: insider and outsider. In general terms, insider reverse veil piercing involves an insider of the corporation seeking to pierce the veil of his own corporation for his own benefit. Outsider reverse veil piercing, on the other hand, involves a third party piercing the corporate veil to reach the assets of a corporation to satisfy the debts of a corporate insider. *See, e.g.*, *In re Howland*, 516 B.R. 163, 166 (Bankr. E.D. Ky. 2014); *Hibbs v. Berger*, 430 S.W.3d 296, 309-10 (Mo. Ct. App. 2014) (distinguishing insider and outsider reverse veil

reverse veil piercing cases directly on point[.]" DE #31-1, at 4; *see also* DE #40, at 3

("South Carolina . . . has no direct state law expressly recognizing reverse piercing[.]").

EiA argues, however, that *Kincaid v. Landing Dev. Corp.*, 344 S.E.2d 869 (S.C. Ct. App.

1986), "in fact applied the doctrine (without using the name)[.]" DE #40, at 3. In the

Court's view, EiA stretches the meaning of *Kincaid* too far. *Kincaid* did not involve

holding a corporate entity liable for the debts of a shareholder. Instead, Kincaid and

Davidson sued for negligent construction and breach of warranty and obtained judgment

against three related corporations (LDC, RMG, and RCC). *Id.* at 871-72. The court

merely held that it was not error for the trial court to refuse to direct a verdict in favor of

RMG "since it was merely the sales and marketing agent" due to "an amalgamation of

corporate interests, entities, and activities so as to blur the legal distinction between the

corporations and their activities." *Id.* at 874 (internal quotation marks removed). This

case, which is suggestive of direct liability on contract based on entity activity or

involvement, *id.* (identifying RMG as direct actor relative to causes of action), is far

afield from applying reverse veil piercing to hold RMG liable for the debts of a

shareholder. *Accord Mid-South Mgmt. Co., Inc. v. Sherwood Dev. Corp.*, 649 S.E.2d 135,

---

piercing); *Phillips*, 139 P.3d at 644-45; Gregory Crespi, *The Reverse-Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 37-38 (Fall 1990); Michael Richardson, *The Helter Skelter Application of the Reverse Piercing Doctrine*, 79 U. Cin. L. Rev. 1605, 1605-06 (2011). Generally, fewer courts permit insider piercing than outsider. *See, e.g.*, *Turner*, 413 S.W.3d at 277 (insider "adopted by a very few states"); *Phillips*, 139 P.3d at 645-46 ("[A] significant number of jurisdictions also recognize outside reverse piercing."). South Carolina's courts, while giving no guidance on reverse piercing, permit "[t]he corporate form [to] be disregarded only where equity requires the action to assist a third party." *Hunting*, 597 S.E.2d at 806 (quoting *Woodside v. Woodside*, 350 S.E.2d 407, 410 (S.C. Ct. App. 1986)). This leads the Court to be especially hesitant to predict South Carolina would recognize insider reverse veil piercing. This case falls into the outsider reverse veil piercing category. EiA seeks to pierce the Fenwick entities' veils to satisfy McEwan's debts, consistent with the case law and scholarship's outsider definition. The Court proceeds with this distinction in mind.

16

144-45 (S.C. Ct. App. 2007) (refusing to hold parent company liable for debt of subsidiary company and distinguishing *Kincaid* as "not a situation in which one company owed a judgment and the court imposed liability upon the parent company or a shareholder").

One bankruptcy court decision addresses (nearly) the salient topic. *See In re Elkay Indus., Inc.*, 167 B.R. 404 (Bankr. D.S.C. 1994). The court defined reverse veil piercing as when "the shareholder attempts to have the corporate form of his own corporation disregarded for his own benefit." *Id.* at 410. There, "the trustee [wa]s attempting to have the corporate form disregarded for the benefit of the debtor's estate." *Id.* The trustee wanted the debts of a subsidiary corporation considered as the debts of the parent-debtor corporation. *Id.* The court allowed trustee reverse veil piercing despite no guidance from the South Carolina state courts: "Because the court is aware of no South Carolina law accepting or rejecting the remedy of reverse piercing, the court adopts the well-reasoned opinion [in *In re Schuster*, 132 B.R. 604 (Bankr. D. Minn. 1991) (concluding under Minnesota law that the trustee could assert a cause of action for reverse veil piercing for the benefit of the estate)] and determines that the bankruptcy trustee in this case can assert that the debtor corporation was the alter ego of its subsidiary corporation." *Elkay*, 167 B.R. at 411.

*Elkay* does not address the question EiA presents.[14] First, *Elkay* only contemplated a shareholder attempting to have corporate formalities disregarded for his

_____

[14] Bankruptcy courts have subsequently characterized *Elkay* differently. *See, e.g.*, *In re Levitsky*, 401 B.R. 695, 712 (Bankr. D. Md. 2008) (citing *Elkay* for the proposition that "when a debtor in bankruptcy treats a corporation as his alter ego, the corporate assets become part of the bankruptcy estate"); *In re Wardle*, BAP No. NV-05-1000-KMoB, 2006 WL 6811026, at *6 (B.A.P. 9th Cir. Jan. 31, 2006) (rejecting factual reliance on

own benefit (insider), not the third-party (outsider) claim EiA brings. Second, it considered only the debts of a subsidiary corporation—not those of an individual—as debts of the to-be-pierced corporation. Third, it involved bankruptcy trustee action, a distinct area of the law with different underlying interests and values than simple third-party judgment collection.[15] More fundamentally, the Court doubts *Elkay*'s analytical approach to resolving a novel question of state law is sound, and the Court certainly is not bound by a bankruptcy court's determination (via Minnesota law) of how South Carolina would rule on a question of law that South Carolina's courts have never addressed.[16] *See In re Dornier Aviation (N. Am.), Inc.*, 320 B.R. 831, 839 (Bankr. E.D. Va. 2005); *see also Howland*, 516 B.R. at 170 ("[B]ankruptcy courts cannot create substantive rights that are otherwise unavailable under applicable law." (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) and *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000))) (rejecting *Elkay*'s approach and refusing to apply reverse veil piercing without guidance from Kentucky state courts).

---

*Elkay* and stating it authorized the trustee "to assert an action to pierce the corporate veil in reverse" where "the trustee sought to recover a prepetition preference payment made by the debtor"); *In re Mar-Kay Plastics, Inc.*, 234 B.R. 473, 480 (Bankr. W.D. Mo. 1999) (describing reverse veil piercing and stating *Elkay* "allow[ed] shareholder-parent corporation to pierce the corporate veil of its wholly owned subsidiary corporation to recover the fraudulent transfer of assets to a third party"); *In re Mass*, 178 B.R. 626, 630 (Bankr. M.D. Pa. 1995) (stating *Elkay* "recognize[ed] reverse piercing of the corporate veil under South Carolina law").

[15] Indeed, *Elkay* recognized that *Schuster* "determined that the bankruptcy context provides a sufficient basis for allowing reverse piercing." 167 B.R. at 411; *see also Howland*, 516 B.R. at 166 ("The Trustee is in a unique position.").

[16] In fact, South Carolina's courts rejected a (nominal) reverse piercing claim in a different context. *Mangum v. Md. Cas. Co.*, 500 S.E.2d 125, 127 (S.C. Ct. App. 1998) (rejecting "reverse piercing" in the UIM setting while citing traditional veil piercing cases; shareholders could not stack under corporation's policy). *Mangum*'s particular facts and specific legal context counsel against wider application of its holding.

With no South Carolina state law on point—in truth, no such law addressing the question at any level of generality—the Court is mindful of its limited role. It cannot "simply substitute its judgment for that of the state court." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). "[F]ederal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (quoting *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993)). "[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy."[17] *Id.* However, the Court may "look to the practices of other states in predicting how" the South Carolina Supreme Court would rule. *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999); *accord Twin City Fire*

---

[17] For instance, "[a]bsent a clear statement by the Supreme Court of Utah that it has adopted the variant reverse piercing theory[,]" the Tenth Circuit declined to "invent a new theory of liability" not recognized under state law. *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576-77 (10th Cir. 1990). Subsequently, Utah did not apply reverse veil piercing on the facts presented. *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 26-27 (Utah 1990) (noting reverse piercing "follows logically from the basic premise of the alter ego rule and appears consistent with our case law" but requiring a showing "that the corporation itself played a role in the inequitable conduct at issue"); *see also In re McCauley*, 520 B.R. 874, 889 (Bankr. D. Utah 2014) ("[A]lthough the Utah Supreme Court has not definitively adopted this doctrine, it appears that Utah law allows such a claim" (citing *Colman v. Colman*, 743 P.2d 782 (Utah Ct. App. 1987))) (rejecting reverse piercing on the facts). Many doctrinal nuances and general approach indeterminacy characterize the relevant case law, leading the Court to be hesitant to choose an analytical framework for South Carolina without guidance from its courts. Reverse piercing potentially implicates different interests than traditional piercing, another reason for judicial caution in expanding state law without sufficient guidance. *See, e.g.*, *Floyd*, 151 F.3d at 1299 (recognizing other values to examine when considering reverse piercing). Additionally, *Zahra Spiritual Trust v. United States* does not stand for the proposition EiA claims. DE #40, at 7. It did not imply state law recognition of reverse veil piercing from recognition of traditional veil piercing. Instead, it applied Texas precedent to determine state law provided for reverse piercing claims. 910 F.2d 240, 243-45 (5th Cir. 1990) ("[A] few Texas cases shed light on this unusual application of corporate disregard.").

*Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.*, 433 F.3d 365, 370 (4th Cir. 2005) (looking "to other sources, including decisions in other states, for guidance as to how the Supreme Court of South Carolina would rule").

Scholarship and case law indicate that other states' application of reverse veil piercing widely varies. "Each jurisdiction attempting to find the proper rule of law—or at least proper resolution of the case at bar—has looked at different factors in determining where to draw the line between acceptable and unacceptable reverse piercing of the corporate veil." Richardson, 79 U. Cin. L. Rev. at 1616. Mindful that more courts accept outsider reverse piercing than insider, the Court must observe and acknowledge that the law remains generally unsettled. Some states permit outsider reverse piercing; some do not. *Compare C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E.2d 806, 810 (Va. 2003) (holding Virginia recognizes outsider reverse piercing and collecting cases), *with Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96, 101-02 (Ct. App. 2008) (rejecting outsider reverse veil piercing), *and Acree v. McMahan*, 585 S.E.2d 873, 874 (Ga. 2003) ("We reject reverse piercing, at least to the extent that it would allow an 'outsider,' such as a third-party creditor, to pierce the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider."); *see also Floyd*, 151 F.3d at 1299-1300 (noting "many problems" with reverse piercing and stating, "The IRS has presented no authority suggesting that Kansas does or would recognize an outside reverse-piercing claim, and our own review of Kansas law provides no authoritative support for that proposition."); *but see Hibbs*, 430 S.W.3d at 309 (noting the "increasing frequency" with which jurisdictions have employed reverse veil piercing). South Carolina's two neighboring states—North Carolina and Georgia—split on the issue. *Compare Fischer*

*Inv. Capital, Inc. v. Catawba Dev. Corp.*, 689 S.E.2d 143, 151-52 (N.C. Ct. App. 2009) ("[R]everse veil piercing is a recognized legal theory in North Carolina[.]"), *with Acree*, 585 S.E.2d at 874 ("We reject reverse piercing[.]").[18] With South Carolina silent, no consensus, and a direct split in neighboring states, the Court declines to predict, peering into the kaleidoscope of other states' laws, that South Carolina would adopt reverse veil piercing. Such a debatable decision is for its courts, not this one.

EiA next invokes South Carolina's general approach to equity. *See Drury*, 668 S.E.2d at 801 ("South Carolina courts have long observed that equity looks beneath rigid rules of law to seek substantial justice[.]"). "An action to pierce the corporate veil lies in equity[.]" *Hunting*, 597 S.E.2d at 806. As with "all forms of equitable relief, 'the equities of both sides are to be considered, and each case must be decided on its own particular facts.'" *Drury*, 668 S.E.2d at 801 (quoting *Carroll v. Page*, 215 S.E.2d 203, 205 (S.C. 1975)). The Court has considered the equities of the case—including the Fenwick entities' acquiescence to McEwan's (at least personal capacity) deposition statements—in light of applicable legal principles. *See also Quail Hill, LLC v. Cnty. of Richland*, 692 S.E.2d 499, 506 (S.C. 2010) ("[E]quity follows the law.") (internal quotation marks and citation omitted); *Watson v. Xtra Mile Driver Training, Inc.*, 732 S.E.2d 190, 196 (S.C. Ct. App. 2012) (same); *Smith v. Barr*, 650 S.E.2d 486, 490 (S.C. Ct. App. 2007) (same); *Annely v. De Saussure*, 12 S.C. 488, 518-19 (1879) ("Equity does not deny the fundamental principles of law."). The equities appear to favor EiA, but this cannot overcome the state of the law or define what South Carolina would do. The Court also

---

[18] Georgia rejects reverse piercing at least when there are "other adequate remedies available at law." *Carrier 411 Servs., Inc. v. Insight Tech., Inc.*, 744 S.E.2d 356, 360 (Ga. Ct. App. 2013).

notes the possibility of other available remedies. *See, e.g.*, Richardson, 79 U. Cin. L. Rev. at 1623-24 (discussing alternatives to reverse piercing); *see also* DE #34, at 5 (noting EiA "has filed suit in South Carolina . . . in a further effort to collect on its judgment and is currently proceeding in that case"). Thus, Plaintiff may well have remedies that would include execution on McEwan's ownership interests in the entities and/or the pursuit of fraudulent conveyance claims as to McEwan assets transferred without consideration to the entities. *E.g.*, DE ##1 (Complaint), at ¶ 31; 31-4 (McEwan Depo.), at 83-87 (discussing personal asset transfer). EiA does not address the existence or inefficacy of such remedies, which would impact the fundamental unfairness aspect of any equitable calculus.

South Carolina's courts have not squarely addressed *Elkay*'s result or conclusion in the 21 years since it issued. With no precise guidance from the state courts, this Court declines to set sail into the uncharted reverse veil piercing waters and refuses to extend (create) South Carolina law as EiA requests. *Cf. Jacobson*, 48 F.3d at 783 ("Although *Fedele* is now in its fiftieth year, the Virginia Court has never cited that case for the proposition argued by St. Paul and has never expanded the statement . . . . Accordingly, we decline to extend the public policy as announced in the *Fedele* case[.]"); *Romig v. Pella Corp.*, Nos. 2:14-mn-1-DCN, 2:14-CV-433-DCN, 2014 WL 7264388, at *6 (D.S.C. Dec. 18, 2014) ("[T]here is no indication that New York recognizes cross-jurisdictional class action tolling and the court declines to establish such a rule in the first instance." (citing *Jacobson*, 48 F.3d at 783)).

Construing EiA's Complaint in the light most favorable to EiA and accepting all factual allegations as true, the Complaint does not state a plausible claim for relief. South

Carolina law supplies no mechanism for EiA to obtain the relief it seeks. South Carolina has not recognized, and does not recognize, reverse veil piercing in these circumstances (and may not provide for LLC veil piercing). It is not for this Court to unwarrantedly create or expand the State's law.[19]

---

[19]     A few words on Kentucky law. First, the Court reiterates that South Carolina law applies. However, Kentucky law also does not appear to provide for reverse veil piercing in these circumstances. Kentucky's courts have certainly never explicitly blessed the doctrine. *Turner*, 413 S.W.3d at 277 n.4 (In the high court's own words: "Kentucky courts have never addressed reverse piercing."); *Estate of Williams v. Estate of Oates*, No. 2012-CA-327-MR, 2014 WL 2937773, at *4 (Ky. Ct. App. June 27, 2014) (noting that *Turner* did not adopt reverse veil piercing and that Williams failed "to provide any thoughtful insights or compelling arguments as to why this concept should be adopted in the Commonwealth"); *Howland*, 516 B.R. at 167 (discussing state of Kentucky law on the topic). Further, two courts have noted "speculation that Kentucky would probably not recognize reverse piercing[.]" *Williams*, 2014 WL 2937773, at *4; *Turner*, 413 S.W.3d at 277 n.4 ("[A]t least one commentator . . . has concluded that Kentucky would probably not recognize reverse piercing[.]").

     *Nutrition Rich Products, Inc. v. Nutritional Resources, Inc.*, No. 99-CI-483, 2003 WL 1339309 (Ky. Ct. App. Feb. 21, 2003), muddies Kentucky's relevant legal water. There, after invoking veil piercing, the court permitted a lien "against the assets or funds of an alter ego corporation to satisfy the debts of the person who is the alter ego." *Id.* at *3. Invoking equity and "the interests of justice[,]" the court of appeals found the trial court "may properly pierce the corporate veil[.]" *Id.* The court did not nominally discuss or in any way analyze foundationally reverse veil piercing, and subsequent Kentucky opinions do not recognize *Nutrition Rich* as standing for doctrinal adoption. There are important differences between *Nutrition Rich* and this case, including the procedural mechanism chosen by the party seeking enforcement to effect judgment satisfaction, but the central holding—permitting use of corporate assets to satisfy a judgment against an individual in favor of a third party—parallels this case. Nutritional Resources had moved the state trial court for a writ of attachment against Nutrition Rich's bank account for the sums owed by the individual debtors. *Id.* at *1. The trial court found alter ego status and permitted attachment (or non-wage garnishment of business proceeds, or a lien; the appellate opinion uses variant terminology). The case was not, at least explicitly, an action to pierce the corporate veil and impose direct liability, but rather sought attachment or garnishment under CR 69.02. In the end, *Nutrition Rich*'s impact, given its particular factual and procedural underpinnings and recent Kentucky opinions' failure to mention it, is far from clear. *Culver v. Culver* is even more indeterminate. 572 S.W.2d 617, 622 (Ky. Ct. App. 1978) (counting value of corporation toward the value of the marital estate in the divorce property distribution context). One piece of scholarship characterized *Nutrition Rich* as Kentucky "adopt[ing] the inverse method of piercing[,]" meaning "tak[ing] the requirements of traditional veil piercing and appl[ying] them in the

## V.     CONCLUSION

For the reasons stated, the Court **DENIES** EiA's motion for summary judgment (DE #31) and **GRANTS** the Fenwick entities' motions for judgment on the pleadings (DE ##36, 37). The Court will enter a separate judgment.[20]

This the 28th day of September, 2015.



Signed By:

*Robert E. Wier*

United States Magistrate Judge

---

context of a reverse pierce[.]" Nicholas B. Allen, *Reverse Piercing of the Corporate Veil: A Straightforward Path to Justice*, 85 St. John's L. Rev. 1147, 1157 & 1158 n.74 (2011).

Despite *Nutrition Rich*, which *Turner* ignored, Kentucky courts have not explicitly recognized (even outsider) reverse piercing, and when they have mentioned the doctrine generally, the discussion has been negative. While perhaps "it is not unreasonable to conclude that Kentucky may ultimately adopt reverse veil piercing in the right circumstances[,]" *Howland*, 516 B.R. at 168 (noting reverse veil piercing would likely apply only "as a remedy; not as a basis for an independent cause of action"), the Commonwealth has not yet explicitly done so. Such a conclusion "is not assured, however[,]" even if "it is likely Kentucky courts would more readily accept outsider reverse veil piercing than insider[.]" *Id.*

The Court need not resolve or predict an answer to the question, but merely notes the unsettled nature of the present state of relevant Kentucky law. Because South Carolina law applies to resolve the issues presented, the Court also does not address Kentucky's approach to related matters, such as the remedy / cause of action distinction and the propriety of LLC piercing.

[20] The ruling moots pending motions. The Court contemplated a ruling on the motion to compel (DE #47) in advance of determining the dispositive motions. Although dubious of the respondents' conclusory privilege claims and skeletal, tardy privilege logs, the Court decided that resolving the discovery disputes in no way impacted the legal analysis required for the dispositive motion rulings. As such, and in an effort to preserve the limited discovery practice intended by the parties and to avoid an unnecessary privilege ruling, the Court elected to resolve the motion to compel as mooted by the dismissal ruling.